# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 11-CV-2271 (JFB)(ETB)
_____

ROBERT MUNSCH,

Plaintiff,

VERSUS

ANDREA W. EVANS, CHAIRWOMAN OF THE NEW YORK STATE DIVISION OF PAROLE, WALTER WILLIAM SMITH, JR., JAMES FERGUSON, CHRISTINA FERDANDEZ, G. KEVIN LUDLOW, GERALD J. GREENAN, LISA BETH ELOVICH, HENRY LEMONS, SALLY THOMPSON, MICHAEL A. HAGLER, MARY ROSS, JOSEPH CRANGLE, AND JARED BROWN, AS MEMBERS OF THE NEW YORK STATE DIVISION OF PAROLE,

Defendants.

_____

**MEMORANDUM AND ORDER**
February 17, 2012
_____

Joseph F. Bianco, District Judge:

Plaintiff Robert Munsch ("plaintiff" or "Munsch") filed this action against defendants Andrea W. Evans, Chairwoman of the New York State Division of Parole, Walter William Smith, Jr., James Ferguson, Christina Ferdandez, G. Kevin Ludlow, Gerald J. Greenan, Lisa Beth Elovich, Henry Lemons, Sally Thompson, Michael A. Hagler, Mary Ross, Joseph Crangle, and Jared Brown, as members of the New York State Division of Parole (collectively the "defendants"), alleging that the defendants violated his Eighth Amendment and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983").

Plaintiff alleges that his rights were violated by the conditions of his supervision placed on him by the defendants. Specifically, plaintiff contends that the conditions of parole established by the New York State Division of Parole, when he moved to New York and his supervision as a sex offender was transferred from New Jersey to the New York State Division of Parole, were grossly disproportionate and irrational, and thus violated his constitutional rights. Plaintiff's complaint seeks relief in the form of $150,000.00 and an order enjoining defendants from enforcing the present conditions of plaintiff's supervision. At oral argument, plaintiff withdrew his claims for monetary relief.

Defendants have moved to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and argue that plaintiff's claims are barred by the doctrines of res judicata, collateral estoppel, full faith and credit and *Rooker-Feldman*. Moreover, defendants argue that plaintiff's claims are barred by the statute of limitations and, in any event, the defendants are entitled to qualified immunity and Eleventh Amendment immunity. In the alternative, defendants also argue that this action should be dismissed, pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure because the New Jersey Sentencing Judge and the District Attorney in New Jersey are necessary parties to this action and have not been joined, and only a New Jersey State Court has jurisdiction over the length of the period of plaintiff's supervision.

For the reasons set forth below, the motion is granted and the complaint is dismissed in its entirety. First, plaintiff's claims are barred by the doctrines of res judicata, collateral estoppel, full faith and credit and *Rooker-Feldman*. Plaintiff brought a motion in state court which, among other things, challenged the constitutionality of the same conditions of supervision being challenged in this lawsuit. The Nassau County Court rejected those constitutional challenges, and plaintiff did not appeal. Plaintiff now seeks to argue that the Nassau County Court did not have jurisdiction to make that ruling. However, the Second Circuit has explicitly held that the *Rooker-Feldman* doctrine does not permit a losing state court party to argue that the state court was without jurisdiction to make the ruling. Second, the claims are clearly barred by the statute of limitations. The conditions at issue were imposed in 2006, and plaintiff did not bring this lawsuit within the requisite three-year period.

Moreover, there is no basis for equitable tolling. Although plaintiff urges that this Court adopt the "continuing violation" doctrine to extend the statute of limitations because he continues to be under supervision, that doctrine has no application in this context. Accordingly, the complaint is dismissed in its entirety.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint, as well as public records (of which the Court can take judicial notice), and are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motion to dismiss and will construe them in a light most favorable to plaintiff, the non-moving party.

On August 16, 2001, plaintiff was arrested for masturbating under an Atlantic City boardwalk in New Jersey which was reportedly within the view of two boys, ages 11 and 8, who were visiting the beach with the father of one of them. (Compl. at ¶ 5.) Plaintiff pleaded guilty to Endangering the Welfare of a Child in the Third Degree under New Jersey law, New Jersey Statutes Annotated, New Jersey Code of Criminal Justice, 2C24-4(a). (*Id*.) Plaintiff was sentenced to an 18 month term of probation. (*Id*.) Under New Jersey law, the judge was required to impose a sentence of "community supervision for life" following his term of probation. (*Id*.)

Plaintiff was a New York resident and, thus, his probation was supervised by the Nassau County Probation Department where he did not receive negative reports, and no incidents occurred during the probationary

period.[1] (*Id.* at ¶ 6.) On February 25, 2004, plaintiff's probation ended and the "community supervision for life" commenced. (*Id.*) The New Jersey Board of Parole supervised and "[m]inimal conditions of supervision were imposed on the plaintiff." (*Id.*)

On May 24, 2006, the "community supervision for life" condition was transferred to the New York State Division of Parole to administer.[2] (*Id.* at ¶ 7.) The Division imposed the following conditions: (1) a curfew requiring plaintiff to stay home from 7:00 p.m. to 7:00 a.m.; (2) no unauthorized visitations were allowed without prior approval by or knowledge of plaintiff's parole officer; (3) plaintiff could only drive a motor vehicle to and from employment, sex abuse counseling sessions, other mandated treatment programs and to and from meetings with his parole officer; (4) plaintiff could not enter or be within 1000 feet of places where children congregate, such as toy stores, park,s pet stores, schools, playgrounds, video galleries, bike trails, skating rinks, amusement parks, bowling alleys, pool halls, etc., without the prior approval of plaintiff's parole officer; (5) plaintiff was required to inform his parole officer when he established a relationship with another person, was require to inform the other party of his prior criminal history in the presence of the parole officer, and was required to provide the parole officer with the address and telephone number of the other party; (6) plaintiff was required to carry on his person a log truthfully detailing all daily events, including dates, times and places, addresses, vehicle information, as well as naming any persons with whom he came in contact, for review by his parole officer; (7) plaintiff was required to abstain from the use of all alcoholic beverages nor could he frequent any establishment that sold alcoholic beverages for onsite consumption; (8) plaintiff was forbidden to purchase or possess photographic or video equipment with the prior knowledge and permission of his parole officer; (9) plaintiff was forbidden to possess a beeper, scanner or cellphone; and (10) plaintiff was forbidden to rent, operate or be a passenger in any rented vehicle. (*Id.*) Plaintiff has written the Division requesting modification of these conditions, but the Division has not taken any action to change or modify these conditions.[3] (*Id.* at ¶ 8.)

B. The Nassau County Court Action

On January 19, 2010, plaintiff made a motion under the criminal docket number assigned to his Nassau County case and changed the subject matter jurisdiction on the caption to the "Supreme Court of Nassau County." (Pack Aff. ¶ 5; Defs.' Ex. H.) The motion sought: "1. The discharge of the defendant from 'Lifetime supervision' by the New York State Division of Parole as a violation of the defendant's due process and equal protection rights under the Fourteenth Amendment of the United States Constitution [and] 2. An order declaring that the New York State Division of parole's supervision of the defendant violates his due process right's [sic]." (Defs.' Ex. H.)

---

[1] On May 16, 2003, Judge DeRiggi of the Nassau County Court found plaintiff to be a certified sex offender pursuant to Section 168-a of the New York Corrections Law, and his risk assessment level to be Level 1. (Affirmation of Lori L. Pack dated July 22, 2011 in support of Defendants' Motion (the "Pack Aff." ¶ 2; Defs.' Ex. D.)

[2] This transfer was the result of a request by plaintiff, on March 15, 2006, that his community supervision be transferred from New Jersey to New York under the New York Interstate Compact for Adult Offender Supervision. (Pack Aff. ¶ 2; Defs.' Ex. E.)

[3] Plaintiff accepted these conditions when he returned to New York. (Pack. Aff. ¶ 3; Defs.' Ex. G.)

3

On June 3, 2010, the Honorable Judge Calabrese of the Nassau County Court denied plaintiff's motion. (Defs.' Ex. I.) In discussing the Interstate Commission for Adult Supervision ("ICAOS" or the "Compact"), the Compact to which both New York and New Jersey are signatories, Justice Calabrese stated that:

> The Interstate Commission has promulgated rules which are binding on all contracting States. Among the rules is Rule 4.102, which relates to the duration of supervision in the receiving state. "A receiving state shall supervise an offender transferred under the interstate compact for a length of time determined by the sending state." The rule has been further refined by the ICAOS Advisory Opinion 1-2007 which reads, "This rule does not permit a receiving state to provide no supervision and at a minimum the rules of the Compact contemplate that such an offender will be under some supervision for the duration of the conditions placed upon the offender by the sending state under Rule 4.102." This means that New York must supervise the defendant for the length of time determined by New Jersey, which in this case that means lifetime supervision.

(*Id.*) Justice Calabrese also acknowledged that the New York Parole Board has the discretion to impose additional conditions on all parolees, especially where that special condition would have been imposed on an offender if the sentence had been imposed in the receiving state. (*Id.*)

C. Procedural History

On May 11, 2011, plaintiff filed his complaint in this action. Defendants filed their motion to dismiss on July 29, 2011. Plaintiff filed his opposition on September 7, 2011. Defendants submitted their reply on September 28, 2011. Oral argument was held on November 2, 2011. The Court has fully considered all of the arguments presented by the parties.

II. STANDARD OF REVIEW

When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative

4

level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss)

### III. DISCUSSION

#### A. *Rooker-Feldman* Doctrine[4]

##### 1. Standard

The moving defendants argue that the *Rooker-Feldman* doctrine bars plaintiff's claims because plaintiff is essentially appealing Judge Calabrese's decision which held that the lifetime supervision imposed did not violate plaintiff's due process and equal protections rights and declined to disband plaintiff's conditions of his supervision. For the reasons set forth below, the Court finds that plaintiff is barred by the doctrine of *Rooker-Feldman*.

Under the *Rooker-Feldman* doctrine – *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) – a United States District Court has no authority to review final judgments of a state court in judicial proceedings, except for constitutional challenges and reviews pursuant to an application for a writ of habeas corpus. As the Supreme Court held, the doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 125 S. Ct. 1517, 1521-22 (2005); *Hoblock v. Albany Co. Board of Elections*, 422 F.3d 77, 83 (2d Cir. 2005).

The Second Circuit has delineated four requirements for the application of the *Rooker-Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85 (internal citations and quotations omitted). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." *See id*.

##### 2. Application

Here, all four requirements for the *Rooker-Feldman* doctrine are met. Plaintiff brought his motion for relief in state court before Judge Calabrese and it was denied. In that decision, Judge Calabrese refrained from lifting the lifetime supervision requirement and the conditions imposed by the New York Parole Board. Plaintiff is now complaining of the injuries caused by the state-court judgment, namely that he is still subjected to the conditions of his lifetime supervision. Moreover, Judge Calabrese issued his decision on June 4,

---

[4] Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, defendants present an argument pursuant to the *Rooker-Feldman* doctrine. Accordingly, because the defendants' *Rooker-Feldman* argument implicates the Court's subject-matter jurisdiction, the motion would be more appropriately brought under Rule 12(b)(1). *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n. 6 (2d Cir. 2006) (noting that Second Circuit has considered standing challenges under both rules in the past but that 12(b)(1) is the more appropriate rule); *see also Lance v. Coffman*, 549 U.S. 437, 438 n.* (2007) (explaining that *Rooker Feldman* "concerns a district court's subject-matter jurisdiction"). In any event, as discussed above, the Court is independently obligated to determine whether it has subject-matter jurisdiction and, accordingly, considers the *Rooker-Feldman* argument regardless of which rule the defendants assert it under.

2010, almost one year prior to plaintiff filing his complaint in this action.

Plaintiff has also invited the Court to review and reject the state court decision of Judge Calabrese. Plaintiff brought his motion in state court seeking for the Court to not only discharge the defendant from his lifetime supervision on equal protection grounds, but he also sought an order declaring that the New York Division of Parole's supervision of him violated his due process rights. In his decision, in addition to holding that the lifetime supervision cannot be discharged pursuant to the Compact, Judge Calabrese also held that the New York Parole Board was within its discretion to impose its conditions on the plaintiff. (Def.'s Ex. I.) As Judge Calabrese stated:

> In addition to these, Parole may, in its discretion, impose additional conditions, tailored to an individual parolee (9 NYCRR 8003.2(1) and 8003.3). Moreover, Rule 401.1 of the Compact provides, "At the time of acceptance or during the term of supervision, the compact administrator or supervising authority in the receiving state may impose a special condition on an offender transferred under the interstate compact if that special condition would have been imposed on the offender if sentence had been imposed in the receiving state."

*Id.* Thus, Judge Calabrese has already decided that the Parole Board was within its discretion to impose the conditions of the compact and plaintiff is asking this Court to review and reject a state court decision in violation of *Rooker-Feldman.*

The fact that plaintiff did not specifically seek relief in state court under the Eighth Amendment does not alter the Court's analysis. The Second Circuit has emphasized that the *Rooker–Feldman* doctrine provides that lower federal courts lack subject matter jurisdiction over claims that "effectively challenge state court judgments." *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) *narrowed on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). This includes claims that are "inextricably intertwined" with state court determinations. *Id*. (citing *Feldman*, 460 U.S. at 482-83 n16). In addressing the plaintiff's due process and equal protections challenges, Judge Calabrese has already ruled that the Parole Board has the discretion to impose the conditions at issue. Thus, ruling on the new Eighth Amendment legal theory in the instant case would require reversing his judgment that the conditions are legally permissible. Thus, *Rooker-Feldman* also bars the Eighth Amendment claim. *See Hoblock*, 422 F.3d at 86 ("presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state court judgment and seeks to have that state-court judgment reversed.")

Plaintiff also attempts to argue that this Court is not barred by the doctrine of *Rooker-Feldman* because the decision by Judge Calabrese is void for lack of jurisdiction. Thus, according to plaintiff, *Rooker-Feldman* does not bar this action because the Court must simply ignore the state court decision. However, this Court disagrees and finds that the purpose of *Rooker-Feldman* is to avoid the type of review of state court decisions that plaintiff is now seeking.

7

First, the Court notes that plaintiff is attempting to argue that the decision based on his motion is void. Plaintiff brought his motion before the Nassau County Court and now that he has received an unfavorable result, he is attempting to argue that the Court did not have jurisdiction to hear his motion. This is the very act that *Rooker-Feldman* bars.

Moreover, in support of plaintiff's argument plaintiff cites a string of cases from various state appeals courts that hold that if there is no underlying action, there can be no motion. (*See* Pl.'s Opp. Brief at 5.) Plaintiff quotes the case *Koplow v. City of Biddeford*, 494 A.2d. 175, 176 (Me. Sup. Jud. Ct., 1985), which stated:

> We hold, in agreement with various other jurisdictions, that the court does not have jurisdiction to issue a temporary restraining order without the existence of an underlying action. *See, e.g.*, *Smith v. Spitzenberger*, 363 N.W.2d 470 (Minn. 1985); *Long Prairie Packing Co. v. United National Bank, Souix Falls*, 338 N.W.2D 838 (S.E. 1983); *Carolina Freight Car Corp. v. Local Union # 61*, 11 N.C. App. 159, 180 S.E.2d 461, 463 (1971); *see also, Lynch v. Snepp*, 350 F. Supp. 1134, 1140 (W.D.N.C. 1972). Since no underlying action had been filed the Superior Court was without jurisdiction to hear the motion and the case must be dismissed.

(Pl.'s Opp. Brief at 5.) However, unlike the case at bar, the *Koplow* case cited by plaintiff, as well as the cases cited by *Koplow*, are cases where a state lower court decision is being held void in a properly taken appeal. Plaintiff has failed to present any law in support of his argument that he may simply ignore the state court ruling, fail to file an appeal, and then ask the federal court to ignore a state court decision based on lack of jurisdiction.

In fact, the Second Circuit has explicitly rejected plaintiff's contention that a party can avoid *Rooker-Feldman* by arguing the state court ruling was void. *See Kropelnicki*, 290 F.3d at 129 ("[I]f adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment."), *narrowed on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *see also Swiatkowski v. Citibank*, No. 4623-CV-10, 2011 WL 5555856, at *1 (2d Cir. Nov. 16, 2011) (finding *Rooker-Feldman* doctrine applied where decision in appellant's favor would be "declar[ing] the state court judgment fraudulently procured and void") (citations and quotations omitted); *Bikman v. Fisher*, No. 07-CV-2047, 2009 WL 690251, at *1 (2d Cir. Mar. 17, 2009) ("Appellant nonetheless asserts that the *Rooker-Feldman* doctrine did not apply because the Housing Court decision was void and rendered without jurisdiction. Whether the Housing Court had jurisdiction to enter the judgment was an argument that Appellant should have presented on appeal to the Appellate Division, and she has provided no explanation for why the argument was not presented at that time.").

Similarly, in *Thomas and Agnes Carvel Foundation v. Carvel*, Pamela Carvel, *inter alia*, attempted to argue that the Westchester County Surrogate Court's decisions were "null and void" for lack of jurisdiction. 736 F. Supp. 2d 730, 765 (S.D.N.Y. 2010). In addition to finding that Pamela Carvel failed to state a claim on this ground, the court

held, "[i]n any event this court does not sit as an appellate body to review decisions of the state courts." *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 (2005)). Accordingly, like the situation in the instant case, the court declined to find that a state court decision was void for lack of jurisdiction on *Rooker-Feldman* grounds. In short, plaintiff's argument, that the decision of the Nassau County Court was without jurisdiction and thereby void, should have been addressed in a properly taken appeal by plaintiff of Judge Calabrese's decision, and is improperly before this Court. Accordingly, the claim is barred by *Rooker-Feldman.*

B. Res Judicata

In the alternative, the defendants argue that plaintiff's claims are barred by res judicata because plaintiff's claims have already been adjudicated, or could have been adjudicated, in the prior state court action. As set forth below, the Court agrees.

1. Standard

The doctrine of res judicata, otherwise known as claim preclusion, prevents parties from re-litigating issues in subsequent litigation that were or could have been litigated in a prior action. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). Because the prior decision at issue was rendered by a New York State court, New York's transactional analysis of res judicata governs, an analysis which "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). This transactional approach "does not . . . permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action." *Beckford v. Citibank N.A.*, No. 00-CV-205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (quoting *Henry Modell & Co. v. Minister, Elders & Deacons of Ref. Prot. Dutch Church*, 68 N.Y.2d 456, 462 n. 2, 510 N.Y.S.2d 63, 502 N.E.2d 978 (N.Y.1986)). The doctrine applies only if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted). Finally, "[i]n determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id.* Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999). Furthermore, in evaluating the res judicata effect of a prior action, "courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but

rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

2. Application

Defendants argue that both plaintiff's equal protection claim and his Eighth Amendment claim are barred by the doctrine of res judicata because they were brought, or could have been brought, before Judge Calabrese. Plaintiff argues that not only was the underlying decision by Judge Calabrese void for lack of jurisdiction and thus cannot be the basis for res judicata effect, res judicata does not apply because the defendants in this case were not in privity with the plaintiffs of the first case and because parole board decisions are not subject to review in New York Courts. This Court agrees with the defendants and finds that the plaintiff's claims are barred by res judicata.[5]

First, Judge Calabrese decided plaintiff's motion on the merits. Judge Calabrese determined that based on the Compact, New York had no authority to remove plaintiff's lifetime supervision ban and that New York was within its rights to impose the additional conditions of plaintiff's supervision.

Second, the parties to this action were the parties in the prior action before Judge Calabrese or were in privity with them. Munsch was not only the defendant in the action but the party that made the motion that was decided upon. Moreover, this Court finds that the People of the State of New York in their prosecutorial capacity, the plaintiff in the prior action, are in privity with the defendants in this action.

Plaintiff attempts to argue that there is no privity between the People of the State of New York and defendants because New York does not generally consider one actor in the criminal justice system to be in privity with another. In support, plaintiff cites to the case *Brown v. City of New York*, 60 N.Y.2d 897, 458 N.E.2d 1250, 470 N.Y.S.3d 573 (1983), which held that the City of New York and the District Attorney were separate entities and did not stand in a sufficient relationship to apply the doctrine of issue preclusion. However, while *Brown* did not deal with the issue of whether the People of the State of New York and parole boards are in privity, it cited to a case that did and noted that the case in *Brown* was "unlike the situation in *People ex rel. Dowdy v. Smith*, 48 N.Y.2d 477, 482, 423 N.Y.S.2d 862, 399 N.E.2d 894 [(1979)]." *Id.* at 898-899. In *Dowdy*, the court held that "a prior acquittal based on the defense of entrapment in a criminal proceeding collaterally estops the Board of Parole from revoking parole on the basis of the transactions proved and admitted in the criminal action." 48 N.Y.2d 477, 479-80, 423 N.Y.S.2d 862, 399 N.E.2d 894. In that case, the Court of Appeals of New York specifically stated that:

> As to the identity of the parties we encounter no difficulty in concluding, as did Supreme Court and as was not questioned by the Appellate Division, that for present purposes the People as prosecutors in the criminal action stood in sufficient relationship with the Division of Parole in the parole proceeding to meet the requirements of the doctrine in this respect.

---

[5] The Court has already determined *supra* that it cannot review whether or not Judge Calabrese's decision is void for lack of jurisdiction. Accordingly, this Court will not address plaintiff's argument that Judge Calabrese's decision cannot be the basis for res judicata.

10

*Id*. at 482 (citations omitted). Thus, plaintiff cannot argue, based on *Brown*, that a parole board cannot be in privity with the State of New York in its prosecutorial capacity.

Plaintiff also attempts to rely on *People ex rel Jones v. New York State Division of Parole*, 168 Misc. 2d 937, 646 N.Y.S.2d 611 (Sup. Ct. Bronx Cty. 1996), which held that the Parole Board was collaterally estopped from revoking the defendant's parole because a Grand Jury did not indict him for the alleged sale of drugs which was the basis of his parole violation. In *Jones*, although the court found that there was privity between the District Attorney and the parole board, the court did state that the District Attorney and the Parole Board ordinarily are not in privity:

> Thus, when a defendant appears before a Parole Board for a hearing on an alleged violation, it is an administrative proceeding, not a criminal trial. The parole authorities have the burden of proving the defendant's alleged misconduct only by a preponderance of the evidence.
>
> By contrast, the purpose of the criminal trial is to determine the guilt of the defendant and the prosecution has the burden of proving such guilt beyond a reasonable doubt. Therefore, ordinarily, a finding by a Parole Board has no effect upon a subsequent criminal prosecution and vice versa.

*Id.* (citations omitted). Despite this statement, which the plaintiff heavily relies on in his papers, the Bronx County Court relied on *Dowdy* and found that privity existed for collateral estoppel purposes. *Id.* at 941. The court found that the Grand Jury could only have refused to indict because they believed that the arresting officer was mistaken or not truthful and believed the parolee was truthful when he stated that he never sold narcotics. *Id*. Thus, the outcome involved a determination of an issue of ultimate fact. *Id.* Although *Jones* does indicate that the People of New York in their prosecutorial capacity and the Parole Board are usually not in privity, the reasoning is inapplicable in this case. Here, the decision at issue, Judge Calabrese's decision, is not related to the determination of the guilt or innocence of the plaintiff. As discussed *supra*, Judge Calabrese's decision was on a motion brought by the plaintiff to determine whether his lifetime supervision and the conditions imposed by New York violated his constitutional rights. Accordingly, the decision dealt directly with the supervision of the Parole Board and the defendants. Thus, the reasoning is not applicable and the defendants and the People of New York are in privity.

The Court also finds that the claims asserted in this action were, or could have been, raised in the prior action. First, as discussed *supra*, plaintiff previously brought a claim that his lifetime supervision violated his equal protection rights and thus the lifetime supervision must be discharged. Although plaintiff sought discharge of his lifetime supervision, rather than a change of his conditions, the plaintiff did challenge his lifetime supervision on equal protection grounds. Thus, his equal protection claim has already been brought in state court.

Plaintiff also argues that his Eighth Amendment claim could not have been considered by Judge Calabrese because conditions of the Parole Board are not subject to review by the state courts. In support of his argument, plaintiff relies on New York Executive Law Section 259-i(5) which states, "Actions of the board. Any

action by the board or by a hearing officer pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law." Here, plaintiff, in both this action and his prior motion before Judge Calabrese, is alleging that the Parole Board did not act in accordance with the law by violating his constitutional rights. Plaintiff has provided no explanation for why he would be permitted to bring his equal protection and due process claims in state court before Judge Calabrese, but not his Eighth Amendment claim. In other words, there was nothing preventing plaintiff from asserting the Eighth Amendment claim before Judge Calabrese in conjunction with his due process and equal protection challenges. Thus, plaintiff's argument is inapplicable to the situation at hand.[6]

Moreover, plaintiff brings his claim of an Eighth Amendment violation pursuant to Section 1983. However, the Supreme Court, in *Migra v. Warren City School District Board of Educators*, held that a plaintiff who failed to raise a Section 1983 claim in an earlier state court litigation, but could have, is barred from bringing that case in the subsequent federal litigation. 465 U.S. 75, 83 (1984). In *Migra*, the plaintiff failed to raise her Section 1983 claims in an earlier Ohio state court proceeding. *Id*. In holding that plaintiff's failure to bring her Section 1983 claim in the previous action barred her from bringing the claim in federal court, the Supreme Court stated:

> In the present litigation, petitioner does not claim that the state court would not have adjudicated her federal claims had she presented them in her original suit in state court. Alternatively, petitioner could have obtained a federal forum for her federal claim by litigating it first in a federal court. Section 1983, however, does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims. We hold, therefore, that petitioner's state-court judgment in this litigation has the same preclusive effect in federal court that the judgment would have in the Ohio state courts.

*Id*. at 84-85. Thus, plaintiff could have brought his Eighth Amendment claims in his motion before Judge Calabrese when he was challenging his lifetime supervision and the conditions imposed on equal protection and due process grounds. Accordingly,

---

[6] Plaintiff cites to the New York Court Appeals decision in *In re Salvatore Briguglio v. New York State Board of Parole*, which was a case decided under the previous version of the statute, which stated that "so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review of any court." 24 N.Y.2d 21, 29 (1969) (citing *In re Hines v. State Board of Parole*, 293 N.Y. 253, 257 (1944)). In more recent state court cases, in relying on *Briguglio*, it has been held that "[i]f the condition is rationally related to the inmate's past conduct and further chances of recidivism, Supreme Court has no authority to substitute its own discretion for that of the individuals in charge of designing the terms of a petitioner's parole release." *Williams v. New York State Div. of Parole*, 71 A.D.3d 524, 525, 899 N.Y.S.2d 146, 148 (N.Y. App. Div. 2010) (citing *Matter of M.G. v. Travis*, 232 A.D.2d at 169, 667 N.Y.S.2d 11; *Matter of Gerena v. Rodriguez*, 192 A.D.2d 606, 596 N.Y.S.2d 143 (1993); *Matter of Dickman v. Trietley*, 268 A.D.2d 914, 915, 702 N.Y.S.2d 449 (2000)). Thus, while great discretion must be afforded the decisions of the parole board, a parole board is not free to violate the law by imposing irrational or "cruel and unusual" conditions. Accordingly, while a parole board is granted great discretion, plaintiff's contention that New York Executive Law Section 259-i(5) would have prevented plaintiff from bringing a valid Eighth Amendment claim in any state court is without merit.

plaintiff's claims are barred by the doctrine of res judicata.

## C. Statute of Limitations

There exists no federal statute of limitations within which claims under Section 1983 must be brought. *See Wilson v. Garcia*, 471 U.S. 261, 266-267, 105 S.Ct. 1938 (1985), *superseded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–81, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering Section 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250, 109 S.Ct. 573 (1989). In New York, pursuant to New York Civil Practice Law and Rules Section 214, a three year statute of limitations exists "to recover upon a liability, penalty or forfeiture created or imposed by statute." N.Y.C.P.L.R. § 214(2).

Federal law determines when such claims accrue, but New York law then determines "whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)). The Second Circuit has ruled that accrual of a Section 1983 claim occurs when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *See Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) *cert. denied*, 450 U.S. 920 (1981); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm.").

Defendants argue that the plaintiff's claim accrued on or near December of 2006 when the conditions that are being challenged were imposed on the plaintiff.[7] Accordingly, plaintiff's claim would be untimely. Plaintiff argues that the complaint is timely because plaintiff has been affected every single day of his life and, thus, the "continuing violation" doctrine applies and the statute of limitations is tolled. For the reasons set forth below, the Court finds that plaintiff's argument is without merit and that the plaintiff's claims are untimely.

Plaintiff first attempts to analogize his case to a series of employment discrimination cases in which the continuing violation doctrine was applied because the plaintiff experienced a continuous practice and policy of discrimination. (*See* Pl.'s Opp. Brief at 17 (citing *Washington v. County of Rockland*, 373 F. 3d 310, 317-18 (2d Cir. 2004) (quoting *Fitzgerald v.*

---

[7] Plaintiff's complaint states that "On May 24, 2006, the 'community supervision for life' condition was transferred to the New York State Division of Parole to administer. Although there was no intervening misconduct by Mr. Munsch during the entire period from August, 2001 to May 2006, the Division imposed much more restrictive conditions upon him." (Pl.'s Compl. at ¶ 7.) Plaintiff also annexes as a part of Exhibit "A" to his complaint a document dated May 24, 2006 and titled "State of New York Executive Department – Division Of Parole Special Conditions Of Release To Parole Supervision." (*Id.* at Ex. "A".) In this document, plaintiff acknowledges the special conditions being imposed on him that he is now challenging. (*Id.*) Thus, it appears that plaintiff was aware of the conditions being imposed on him, and that said conditions were imposed on him, as of May 24, 2006. However, defendants assert that the conditions were not imposed until on or about December 2006. (Defs.'Brief at 16.) In plaintiff's brief, plaintiff does not dispute the December 2006, date but argues that the continuing violation rule applies. (Pl.'s Opp. Brief at 16.) Regardless, the Complaint is untimely whether the statute of limitations began to run on May 24, 2006 or December 2006. Therefore, the Complaint is time barred.

*Henerson*, 251 F.3d 345, 359 (2d Cir. 2001)) and *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).) However, the plaintiff's argument is without merit.

In the employment discrimination context, "[i]f a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington*, 373 F.3d at 317-18 (quoting *Fitzgerald*, 251 at 359). In that context, "[c]onduct that has been characterized as a continuing violation is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'" *Id.* at 318 (quoting *Nat'l R.R. Passenger Corp.* 536 U.S. at 111). As stated by the Southern District of New York

> The continuing violation exception to the statute of limitations is "designed to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered . . . timely.'" . . . The chief purpose of the doctrine is to protect the rights of plaintiffs where 'the earlier discrimination may only be recognized as actionable in the light of 'events that occurred later.

*Keddy v. Smith Barney, Inc.*, No. 96 Civ. 2177 (DAB)(SEG), 2000 WL 193625, at *3 (S.D.N.Y Feb. 16, 2000) (citing *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999), *cert. denied*, 120 S.Ct. 178 (1999)).

The rationale behind applying the continuing violation exception to the statute of limitations does not apply to the case at hand. Unlike in the employment discrimination context cited by plaintiff, here, plaintiff did not suffer a series of individual acts which when taken together amount to a violation of plaintiff's rights. Plaintiff only cited one specific incident, the imposition of the conditions of his supervision imposed in New York. Thus, plaintiff's argument is without merit.

Plaintiff also attempts to rely on the case *Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009), for the proposition that the continuing violation doctrine applies to his claims. However, this reliance is misplaced.

In *Shomo*, the court dealt with a prisoner claiming deliberate indifference to a serious medical need. *Id*. The Court held that the "[c]ontinuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." *Id*. at 182. However, the court clarified and stated:

> [t]hat the continuing violation doctrine *can* apply, however, does not mean it must. To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time barred acts taken in the furtherance of that policy.'

*Id*. (emphasis in original) (citing *Harris v. City of New York*, 186, F.3d 243, 250 (2d Cir. 1999).

14

First, *Shomo* did not indicate that the continuing violation theory is applicable to all Eighth Amendment claims. It merely extended the application of the continuing violation theory to deliberate indifference claims that were based on cumulative medical acts over time constituting, in their totality, a constitutional violation. That analysis has no application to the instant situation. There are no cumulative acts; rather, the challenged act is the imposition of the conditions in 2006 – a singular event. The fact that the detrimental effects of that discrete decision may be continuing does not extend the statute of limitations indefinitely. *See Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (no continuing violation doctrine on Section 1983 claim alleging repeated failure to arrest domestic violence suspect); *see also Ognigene v. Niagara County Sheriff's Dep't*, 117 Fed. App'x 798, 799 (2d Cir. June 11, 2005) (Section 1983 claims time-barred "notwithstanding any continuing detrimental effects he may be suffering as a result of the alleged constitutional violations"). Thus, there is no legal basis to extend *Shomo* outside the context of medical indifference claims by applying the continuing violations doctrine to Eighth Amendment claims challenging parole conditions imposed entirely outside the statute of limitations.

Moreover, *Shomo* made clear that a plaintiff must still show that there is some non-time barred act. Here, even if *Shomo* did provide that the continuing violation theory could apply to plaintiff's Eighth Amendment claim, plaintiff would not be able to meet his burden because, as discussed *supra*, he suffered one act, the imposition of his conditions in New York. Plaintiff has failed to point to one other act that has taken place during the applicable time period that would justify applying the continuing violation theory. Accordingly, this argument is also without merit.

The Eleventh Circuit has addressed a situation closely analogous to the case at bar, and did not apply the continuing violation doctrine. In *Lovett v. Ray*, the Eleventh Circuit declined to apply the continuing violation theory to plaintiff's complaint pursuant to Section 1983 which alleged that the defendants violated his constitutional rights by changing the frequency of his parole consideration under a newly enacted law. 327 F.3d 1181, 1182 (11th Cir. 2003). The Eleventh Circuit held that the decision not to consider Lovett for parole again until 2006 was a "one time act with continued consequences" and thus, there was no continuing violation to toll the statute of limitations. *Id.* at 1183. As the Eleventh Circuit explained:

> The critical distinction in the continuing violation analysis . . . is whether the plaintiff[ ] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does.

*Id.* (citing *Knight v. Columbus, Ga.*, 19 F.3d 579, 580-81 (11th Cir. 1994); *see also Jones v. Henry*, 260 Fed. App'x 130, 132 (10th Cir. 2008) ("We reject Plaintiff's argument that each denial or parole consideration is a separate cause of action for statute of limitations purposes."). This Court agrees with the reasoning in *Lovett*. Like the decision in *Lovett*, the decision to impose conditions to plaintiff's lifetime supervision was a "one time act with continued consequences." Accordingly, the plaintiff's claims are time barred because the continuing violation doctrine does not

15

apply.[8] Thus, plaintiff's claims must be dismissed in their entirety as time-barred.[9]

## VI. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss plaintiff's complaint, pursuant to Rule12(b)(6) of the Federal Rules of Civil Procedure, is granted. The Clerk of the Court shall enter judgment accordingly and close the case.

---

[8] There is also no basis for equitable tolling in this case. "Tolling of the time limit is granted when 'rare and exceptional circumstances' prevented a plaintiff from filing on time." *Williams v. Potter*, No. 06 Civ. 8258 (LAP), 2007 WL 2375818, at *5 (S.D.N.Y. Aug. 14, 2007) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)). When determining whether equitable tolling is applicable, a district court must consider "whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect") (citation and quotation marks omitted). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000); *see also Smith v. Chase Manhattan Bank*, No. 97 Civ. 4507 (LMM), 1998 WL 642930, at *3 (S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

[9] Defendants also argue that plaintiff's complaint should be dismissed on the grounds of collateral estoppel, full faith and credit, qualified immunity and failure to join necessary parties. However, because the Court finds that the complaint must be dismissed in its entirety because it is barred by *Rooker-Feldman*, res judicata and statute of limitations, the Court need not address defendants' additional arguments.

SO ORDERED.

---
JOSEPH F. BIANCO
United States District Judge

Dated:   February 17, 2012
         Central Islip, NY

\* \* \*

Plaintiff is represented by Diarmuid White, Esq., of the firm White and White, 148 East 78th Street, New York, NY and Leon Friedman, Esq., of the Offices of Leon Friedman, 148 East 78th Street, New York, NY 10075. Defendants are represented by Lori L. Pack, Esq., of the Office of the New York State Attorney General, located at 300 Motor Parkway, Suite 205, Hauppauge, NY 11788.